**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **FOURKITES, INC.,** | |
| Plaintiff, | CASE NO. |
| **v.** | JUDGE: |
| **MACROPOINT, LLC,** | |
| Defendant. | DEMAND FOR JURY TRIAL |

## COMPLAINT

Plaintiff FourKites, Inc. ("FourKites"), for its Complaint against Defendant MacroPoint, LLC ("MacroPoint") alleges as follows:

## INTRODUCTION

1.      This is an action for declaratory relief regarding United States Patent Nos. 8,275,358 ("the '358 patent") and 9,429,659 ("the '659 patent"), and for injunctive relief and to recover damages as a result of unfair competition and anticompetitive practices by MacroPoint.

2.      FourKites seeks by the present action to terminate MacroPoint's continuing threats and actions, including not only against FourKites, but against FourKites' customers as well, despite this Court—less than one year ago—ruling that the alleged "invention" of MacroPoint's relevant patents was not patentable.

3.      As discussed in greater detail below, despite this Court's prior ruling, which remains pending appeal, MacroPoint has continued a pattern and practice of anticompetitive behavior that misrepresents the status of legal proceedings in this and the United States Court of Appeals of the Federal Circuit, which threatens FourKites' customer relationships and business development efforts.  At the same time, MacroPoint has continued to seek new patents from the

1

United States Patent and Trademark Office ("USPTO") directed to the same unpatentable concepts that this Court previously held invalid.  On August 30, 2016, it was successful in obtaining such a new patent, and immediately asserted that patent – in a different court – against one of FourKites' customers.

4.       The facts and circumstances of MacroPoint's actions establish an improper course of conduct that, unless and until abated, will continue to interfere with and threaten FourKites' legitimate business relationships.  The Court should act quickly to put an end to MacroPoint's conduct.

## PARTIES

5.       FourKites is a Delaware corporation having a principal place of business in Chicago, Illinois.

6.       On information and belief, MacroPoint is a limited liability company organized and existing under the laws of the State of Ohio with a principal place of business in Cleveland, Ohio.

## JURISDICTION AND VENUE

7.       This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338 over FourKites' claims under the Patent Laws of the United States, 35 U.S.C. §§ 100 *et seq.*, and its claims for False Advertising and Unfair Competition under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*  In addition, under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over FourKites' state-law unfair competition and deceptive trade practices claims. These state-law claims arise out of the same nucleus of operative facts giving rise to FourKites' Lanham Act claims and are so related to the federal antitrust claim that they form part of the same case or controversy.

8.      This Court has personal jurisdiction over MacroPoint because it is organized under the laws of the State of Ohio and it has its headquarters and primary places of business in the State of Ohio.  MacroPoint also has previously availed itself of this Court's jurisdiction on two prior occasions.   In February 2014, MacroPoint sued in this Court Salebug.com, LLC, GoStrat LLC, Pegasus TransTech Corporation, and Prasad Gollapalli for infringement of United States Patent No. 8,604,943 ("the '943 patent").   In May 2015, MacroPoint sued FourKites in this Court for infringement of the '943 patent, and later amended its complaint to additionally assert United States Patent Nos. 9,070,295 ("the '295 patent"), 9,082,097 ("the '097 patent"), 9,082,098 ("the '098 patent"), and 9,087,313 ("the '313 patent") (collectively, together with the '943 patent, "the '943 patent family").

9.      Venue is proper in this District under 28 U.S.C. §1391 because MacroPoint resides in this District and a substantial part of the events or omissions giving rise to the claims FourKites asserts occurred in this District.

## FACTUAL ALLEGATIONS

**I.      MacroPoint's Previous Suit Against FourKites.**

10.      In May 2015, MacroPoint sued FourKites in this Court for infringement of the '943 patent, but MacroPoint did not serve FourKites.   Instead, MacroPoint sent threatening letters to FourKites' existing and potential customers and partners.

11.      Despite not being served with a summons and complaint, FourKites voluntarily appeared in this Court and immediately filed a motion to dismiss MacroPoint's claims because, among other reasons, the '943 patent was invalid under 35 U.S.C. § 101 for claiming unpatentable subject matter.

12.      Shortly thereafter, MacroPoint amended its claims against FourKites to assert the

four additional patents of the '943 patent family.  FourKites renewed its motion and challenged the patentability of all of the claims of all of the patents in the '943 patent family.

13.     In November 2015, this Court ruled in favor of FourKites.  *See* Case No. 1-15-cv-01002, Dkt. # 25.  The Court agreed that all of the claims of all of the patents in the '943 patent family were invalid. First, the Court found that the claims of the '943 patent family were directed to the abstract idea of tracking freight.  Second, the Court found that the claims of the '943 patent family did not include an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application.  A true and correct copy of the Court's memorandum opinion and order is attached hereto as Exhibit A and is incorporated by reference.

14.     As set forth in its memorandum opinion and order, this Court determined that the '943 patent family did no more than instruct the use of a conventional computer and preexisting technology and the incorporation of pre-existing industry standards for notice and consent in relation to the use of tracking systems.  This Court further held that, although the patents in the '943 patent family did not entirely foreclose all tracking of freight, the steps in the claimed invention did involve well-understood, routine, conventional activity, and that upholding the patents would risk disproportionately tying up the use of the underlying conventional steps.

15.     In December 2015, MacroPoint appealed the Court's decision to the United States Court of Appeals for the Federal Circuit.  As of the date of this complaint, that appeal is fully briefed and oral argument is scheduled for December 6, 2016.

**II.     MacroPoint's Conduct at the Patent Office.**

16.     At the time of this Court's judgment invalidating claims of the '943 patent family, MacroPoint had a pending United States Patent Application No. 14/752,005 ("the '005 application") that claimed priority to the '943 patent family.  Pursuant to a December 3, 2015

4

office action, the applied-for claims of the '005 application were allowable provided MacroPoint corrected a typographical error and filed a terminal disclaimer.

17.     On January 27, 2016, FourKites sent to the USPTO a Protest under 37 C.F.R. § 1.291, in which FourKites made the USPTO aware of the Court's November 2015 decision and other additional prior art references that FourKites alleged made the claims of the '943 patent family obvious.

18.     On February 4, 2016, MacroPoint's patent attorney filed a letter with the USPTO stating that it was "working diligently to finish reviewing" FourKites Protest and that it would "shortly file a Reply to the Protest detailing all reasons why the Protest should not be entered into the record of the application."  MacroPoint requested that the USPTO "please delay reaching a resolution to enter the Protest in the record of the application until you [have] had an opportunity to review applicant's Reply." Instead, later that same day, MacroPoint expressly abandoned the '005 application despite its claims otherwise being found allowable by the USPTO subject to corrections of objections and the filing of the terminal disclaimer.

19.     At that same time, MacroPoint also had pending United States Patent Application Nos. 14/987,692 ("the '692 application") and 14/987,707 ("the '707 application"), both of which claim priority to the patents of the '943 patent family, and to which FourKites also submitted Protests under 37 C.F.R. § 1.291.

20.     The '692 application was also abandoned.  The circumstances of the abandonment of the '692 application are not presently known because it remains under seal at the USPTO.

21.     On March 4, 2016, the examiner at the USPTO responsible for reviewing the '707 application issued an office action stating that the claims of the '707 application were allowable subject to corrections of objections and the filing of the terminal disclaimer.  The examiner of the

'707 application is the same examiner who reviewed each and every issued patent in the '943 patent family, including those subsequently invalidated by this Court.  On March 7, 2016, MacroPoint filed its terminal disclaimer, corrected the objections, and requested immediate allowance of the '707 application.

22.    On April 15, 2016, MacroPoint filed a petition with the USPTO Office of Petitions requesting that FourKites' Protest be struck from the record of the '707 application. While that petition was pending, the examiner instructed MacroPoint to file a response to FourKites' Protest.  The USPTO denied MacroPoint's petition to strike FourKites' Protest on May 4, 2016.  The next day, MacroPoint conducted a telephone interview with the examiner during which it discussed FourKites' Protest with the examiner.  On May 27, 2016, MacroPoint filed its formal response to FourKites' Protest, and the examiner thereafter entered a notice of allowance.

23.    The consideration of FourKites' protest was an ex parte proceeding in which FourKites was not permitted an opportunity to argue its positions to the USPTO or to advocate, including on the basis of this Court's November 2015 decision.  Indeed, pursuant to 37 C.F.R. § 1.291, FourKites was permitted to submit no more than a listing of the patents, publications, or other information relied upon, together with a concise explanation of the relevance of each item listed and a copy of the same.  As stated in Section 1901 of the Manual of Patent Examining Procedure, "[a] protestor does not, by the mere filing of a protest, obtain the 'right' to argue the protest before the Office. Active participation by a protestor ends with the filing of the protest, and no further submission on behalf of the protestor will be considered."

24.    On August 30, 2016, despite this Court's ruling that the other patents in the '943 patent family were invalid, the '707 application issued as the '659 patent.  A true and correct

copy of the '659 patent is attached hereto as Exhibit B.

### III.    MacroPoint's Public Statements Before & After Issuance of the '659 Patent.

25.    In May 2015, after MacroPoint originally sued FourKites – but had not served FourKites with process – MacroPoint sent letters to FourKites' then-current and potential customers and partners.  For example, in a letter dated May 29, 2015, MacroPoint's counsel wrote to Ruan Transportation Management Systems ("Ruan Transportation") "because of MacroPoint's concern that its intellectual property rights are infringed by a company offering a software solution that Ruan may be considering using."  See Exhibit C at 1.  MacroPoint's counsel was "[s]pecifically . . . referring to a software solution provided by FourKites, Inc."  *Id.* While MacroPoint did not explicitly accuse Ruan Transportation of infringement, the letter constituted a thinly-veiled threat as it noted MacroPoint's filing of a complaint for infringement against FourKites, coupled with a suggestion that Ruan Transportation conduct its own analysis to determine whether working with FourKites would be an act of infringement.  As FourKites and MacroPoint continued to compete head-to-head for new customers, MacroPoint continued to send additional threatening letters to new potential customers.

26.    During this same time, MacroPoint also published press releases regarding its patents and caused recurring news coverage of its lawsuit against FourKites, creating the impression MacroPoint had filed suit more often or more recently than it had.  When quoted in these announcements and press coverage, MacroPoint's representatives would characterize the scope of their patents as encompassing the broad concepts of tracking or monitoring freight or vehicles.  MacroPoint's statements falsely led the industry and customers to believe MacroPoint had a legal right to a monopoly on tracking or monitoring freight or vehicles generally.

27.    At the same time, however, MacroPoint was making contrary representations to

this Court and to the United States Court of Appeals for the Federal Circuit, to whom MacroPoint was alleging its patent rights were directed to a specific, narrow application that did not preempt the broader concept of tracking freight. For example, in the opposition briefed it filed with this Court, MacroPoint contended that "[t]he claims of the patents-in-suit include limitations that substantially narrow the claims, which prevents preemption and allows for the practice of other solutions for 'tracking freight with a computer' to be practiced."  Similarly, in its appellate reply brief filed on July 20, 2016, MacroPoint argued that its patent claims "are directed to a specific way of monitoring shipments."   Case No. 16-1286, Dkt. # 28 at 6. MacroPoint contended that "[t]he claims are confined to the inventor's unique contribution and don't preempt the general idea of tracking freight."  *Id.*  MacroPoint further represented to the Federal Circuit that "MacroPoint's claims cover only a specific way of tracking freight by obtaining the location information of a communications device from a third party while also obtaining consent from the communications device."  *Id.* at 11.  These statements are contrary to the broad statements it made in the press and to the customers and partners for which the parties are respectively competing.

28.    MacroPoint also disseminated information directly to FourKites' potential customers and partners during sales pitches and at industry conventions and tradeshows.  Before it had even filed its opening appellate brief in connection with its appeal of this Court's prior decision invalidating the '943 patent family patents, MacroPoint was providing written assurances to FourKites' customer prospects that MacroPoint would prevail in the appeal, and threatening those prospects if they decided to work with FourKites instead of MacroPoint. MacroPoint went so far as to distribute sales materials with an "Intellectual Property Notice" that mischaracterized the status of its by-then-dismissed case against FourKites:

INTELLECTUAL PROPERTY NOTICE:
MacroPoint's solution for 'App-less' tracking is patented. MacroPoint is currently pursuing federal litigation against FourKites in the court of appeals for the federal circuit. Upon the Federal Circuit agreeing with MacroPoint, the trial court's decision will be forthcoming on whether FourKites infringes MacroPoint's patents.

29.     The "Intellectual Property Notice" claim, namely, that "MacroPoint [was] currently pursuing federal litigation against FourKites in the [C]ourt of [A]ppeals for the [F]ederal [C]ircuit" was false and misleading.    At most, MacroPoint could only "pursue" an appeal of a decision from this district court that had found its patent claims invalid.    The selectively bolded statement "Federal Circuit agreeing with MacroPoint" falsely suggested that the Federal Circuit had already or would decide MacroPoint's appeal in its favor.  Likewise, the statement that "the trial court's decision will be forthcoming on whether FourKites infringes MacroPoint's patents" suggests that a district court decision limited solely to the issue of infringement by FourKites would necessarily follow Federal Circuit reversal of this court's prior invalidity judgment.

30.     The wording and formatting of MacroPoint's "Intellectual Property Notice" created an overall impression that was inaccurate and misleading.  The Notice suggested that MacroPoint had at that time valid, enforceable, and presently existing patent rights; that MacroPoint was actively pursuing live claims against FourKites for infringement of those patent rights; and that the Federal Circuit had upheld the validity of those patents rights.

31.     Following the issuance of the '659 patent, MacroPoint continued its course of conduct. Despite not filing suit against FourKites for infringement of the '659 patent, MacroPoint has repeatedly threatened FourKites' current and potential customers and partners, stating that working with FourKites would infringe the '659 patent, and suggesting that FourKites may be unable to continue operating in any capacity due to the issuance of the '659

patent.

32.     Moreover, in addition to threatening unfounded legal claims, MacroPoint has misappropriated FourKites' creative works to confuse and deceive the public about the parties' respective freight tracking services and product offerings.  For example, FourKites advertises its freight tracking services and product offerings on its website www.fourkites.com.  FourKites' website includes descriptions of the user interfaces through which it provides customers and partners with access to its freight tracking services and product offerings.  FourKites' user interfaces are sophisticated and user-friendly, and they are frequently praised by its customers and partners.  FourKites predominantly advertises its user interfaces on its website, including by displaying screenshots of the same.

33.     One such screen shot of a user interface is the FourKites Product ELD Screenshot. The Product ELD Screenshot is featured on the "Products" page of FourKites' website at https://www.fourkites.com/products.  The Product ELD Screenshot depicts a FourKites' user interface for tracking and managing freight displayed on a laptop computer.  A reproduction of the Product ELD Screenshot appears below:



34.     MacroPoint has misappropriated the FourKites Product ELD Screenshot to advertise its own freight tracking services and product offerings.   Below is a screenshot of a MacroPoint advertisement that incorporates an identical copy of the Product ELD Screenshot:



35.     A larger reproduction focusing on MacroPoint's use of the FourKites Product ELD Screenshot (the "MacroPoint Rebranded Product ELD Screenshot") appears below:



36.     MacroPoint has copied the FourKites Product ELD Screenshot and used it in its own advertising. For example, the MacroPoint Rebranded Product ELD Screenshot incorporates the same five tabs across the top of the user interface as in the FourKites Product ELD Screenshot, with the second tab selected as denoted by contrasting colors.  Similarly, the MacroPoint Rebranded Product ELD Screenshot incorporates the information dashboard consisting of a first row with one horizontal box spanning the length of the dashboard and a second row with three boxes as in the FourKites Product ELD Screenshot.  Similarly, the MacroPoint Rebranded Product ELD Screenshot incorporates the check calls dashboard, including three entries, depicted alongside a map interface displaying tracking pins as in the FourKites ELD Screenshot is visible in each depiction.

37.     These similarities are merely exemplary and demonstrate that MacroPoint copied the FourKites Product ELD Screenshot and used it to advertise freight tracking services and product offerings that compete with FourKites' freight tracking services and product offerings. They evidence that MacroPoint intentionally uses the MacroPoint Rebranded Product ELD Screenshot to create a false or misleading description of fact or false or misleading representation of fact likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of MacroPoint with FourKites, or as to the origin, sponsorship, or approval of the parties' respective freight tracking services and product offerings, and to misrepresent the nature, characteristics, qualities, or geographic origin of the parties' respective freight tracking services and product offerings in commercial advertising or promotion.

38.     In addition to falsely advertising its own freight tracking services and product offerings, MacroPoint has interfered with FourKites' ability to advertise its own freight tracking services and product offerings.  For example, FourKites tried to enter into an advertising

arrangement with an independent third party.  On information and belief, MacroPoint interfered with that arrangement, using threats of litigation and bullying to intimidate the third party into withdrawing from the arrangement.  MacroPoint's attempts to monopolize advertising channels to the exclusion of FourKites is another form on unfair competition damaging to FourKites.

39.     MacroPoint's course of conduct often delayed or diminished, and in some cases may have caused the loss of, FourKites' entry into business relationships with new customers, thereby damaging FourKites.

### IV.     MacroPoint Sues FourKites' Customer, Ruiz Food Products.

40.     Within hours of the '659 patent issuing on August 30, 2016, MacroPoint filed suit against Ruiz Food Products, Inc. ("Ruiz Food Products") in the United States District Court for the Eastern District of Texas.  A true and correct copy of the complaint against Ruiz Food Products is attached hereto as Exhibit D.  In its complaint, MacroPoint contends that Ruiz Food Products infringes the '659 patent by using a machine or group of machines "to monitor location of at least one vehicle carrying freight of Ruiz, freight of Ruiz carried by the vehicle, or both the vehicle and freight carried by the vehicle."  MacroPoint also contends that Ruiz Food Products infringes United States Patent No. 8,275,358 ("the '358 patent") by engaging in a method "to receive consent from at least one operator of a vehicle carrying freight of Ruiz who is a user of a mobile device to obtain location information of the mobile device." A true and correct copy of the '358 patent is attached hereto as Exhibit E.

41.     On information and belief, prior to filing that suit, MacroPoint was aware that Ruiz Food Products is a customer of FourKites.  MacroPoint's suit against Ruiz Food Products is designed to intimidate FourKites' current and prospective customers and partners.  MacroPoint's decision to sue Ruiz Food Products in the Eastern District of Texas, rather than to sue FourKites

13

in this Court, is designed to avoid this Court's prior judgment that the patents of the '943 patent family are invalid under 35 U.S.C. § 101.

## V.   MacroPoint's Alleged Inventions.

42.    On information and belief, MacroPoint did not invent the subject matter claimed in MacroPoint's patents.  The sole named inventor of the MacroPoint patents is Bennett H. Adelson.  All of MacroPoint's patents claim priority to applications originally filed in March 2012.  MacroPoint has publicly stated that the MacroPoint patents are directed to MacroPoint's freight tracking services and product offerings.  However, on information and belief, MacroPoint does not – and has never – operated the entire systems or performed all the steps of the methods claimed in the MacroPoint patents.

43.    On information and belief, MacroPoint does not make phone calls to drivers to obtain their consent to track them.  On information and belief, MacroPoint does not receive location information from those drivers' cell phones.  On information and belief, MacroPoint does not use GPS signals, advanced forward link trilateration, observed time difference, Cell-ID, or any other algorithm to determine the location of a mobile device.  Instead, on information and belief, MacroPoint merely relies on the services of third parties who operate the actual infrastructure and perform the actual steps that are the subject of MacroPoint's alleged inventions.

## VI.   Present Controversy Between MacroPoint and FourKites.

44.    MacroPoint filed a lawsuit claiming that FourKites' customer, Ruiz Foods, infringes one or more of the claims of the '659 patent and the '358 patent.

45.    Although MacroPoint has not sued FourKites for infringement of the '659 patent or the '358 patent, on information and belief, MacroPoint has made statements to various

industry stakeholders and other entities, including to FourKites' current or potential customers or partners such as Ruiz Food Products, that FourKites' freight tracking services and product offerings infringe the '659 patent and/or the '358 patent.

46.     On information and belief, MacroPoint has made statements to various industry stakeholders and other entities, including to FourKites' current or potential customers or partners such as Ruiz Food Products, that the '659 patent and the '358 patent are valid and enforceable.

47.     On information and belief, MacroPoint contends that making, using, offering for sale, or selling FourKites product offerings infringes one or more claims of the '659 patent.

48.     On information and belief, MacroPoint contends that making, using, offering for sale, or selling FourKites product offerings infringes one or more claims of the '358 patent.

49.     MacroPoint's actions have placed a cloud on FourKites' freight tracking services and product offerings, and threatened FourKites' business and relationships with its customers and partners, as well as its sale of FourKites' freight tracking services and product offerings.

50.     In light of all the circumstances, an actual, substantial, and continuing justiciable controversy exists having sufficient immediacy and reality to warrant the issuance of a declaration of rights by the Court between FourKites and MacroPoint as to whether FourKites infringes one or more claims of the '659 patent or whether any valid claim of the '659 patent exists.

51.     In light of all the circumstances, an actual, substantial, and continuing justiciable controversy exists having sufficient immediacy and reality to warrant the issuance of a declaration of rights by the Court between FourKites and MacroPoint as to whether FourKites infringes one or more claims of the '358 patent or whether any valid claim of the '358 patent exists.

## COUNT I

### (DECLARATORY JUDGMENT OF NON-INFRINGEMENT – '659 PATENT)

52.     FourKites repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

53.     FourKites' manufacture, use, offer for sale, sale, and/or importation into the United States of FourKites' freight tracking services and product offerings does not infringe any valid claim of the '659 patent, directly or indirect, literally or under the doctrine of equivalents.

54.     There is an actual, substantial, and continuing justiciable case or controversy between FourKites and MacroPoint regarding infringement of the '659 patent in connection with FourKites' freight tracking services and product offerings.

55.     FourKites is entitled to a judicial determination that FourKites' freight tracking services and product offerings do not infringe any valid, properly construed claim of the '659 patent.

56.     This case is an exceptional one, and FourKites is entitled to an award of its reasonable attorneys' fees and costs under 35 U.S.C. § 285.

## COUNT II

### (DECLARATORY JUDGMENT OF INVALIDITY – '659 PATENT)

57.     FourKites repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

58.     The claims of the '659 patent are invalid for failure to comply with the requirements of patentability specified in Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, 116 and/or 120, and/or based on other judicially-created bases for invalidation.

59.     An actual and justiciable case or controversy exists between FourKites and MacroPoint as to whether one or more claims of the '659 patent is invalid.

60.     FourKites is entitled to a declaration that the claims of the '659 patent are invalid.

61.     This case is an exceptional one, and FourKites is entitled to an award of its reasonable attorneys' fees and costs under 35 U.S.C. § 285.

## COUNT III

## (DECLARATORY JUDGMENT OF PATENT MISUSE – '659 PATENT)

62.     FourKites repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

63.     MacroPoint has and is misusing the '659 patent by asserting or threatening claims of infringement against Ruiz Food Products and other current and potential customers of FourKites.

64.     MacroPoint knows that the claims of the '659 patent are directed to unpatentable subject matter as previously found by this Court with respect to nearly identical claims of patents in the '943 patent family.

65.     MacroPoint's assertion of the '659 patent against these entities is an attempt to impermissibly broaden the scope of the '659 patent grant and to block open and fair competition in the market, which constitutes a knowing, anticompetitive misuse of the '659 patent.

66.     The '659 patent was obtained and is being exploited and used by MacroPoint in an improper manner. Accordingly, the claims of the '659 patent are unenforceable for patent misuse.

67.     An actual and justiciable controversy exists between the parties with respect to the '659 patent, and FourKites is entitled to a declaratory judgment that the '659 patent is

unenforceable for patent misuse.

68.      This case is an exceptional one, and FourKites is entitled to an award of its reasonable attorneys' fees and costs under 35 U.S.C. § 285.

## COUNT IV

## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT – '358 PATENT)

69.      FourKites repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

70.      FourKites' manufacture, use, offer for sale, sale, and/or importation into the United States of FourKites' freight tracking services and product offerings does not infringe any valid claim of the '358 patent, directly or indirect, literally or under the doctrine of equivalents.

71.      There is an actual, substantial, and continuing justiciable case or controversy between FourKites and MacroPoint regarding infringement of the '358 patent in connection with FourKites' freight tracking services and product offerings.

72.      FourKites is entitled to a judicial determination that FourKites' freight tracking services and product offerings do not infringe any valid, properly construed claim of the '358 patent.

73.      This case is an exceptional one, and FourKites is entitled to an award of its reasonable attorneys' fees and costs under 35 U.S.C. § 285.

## COUNT V

## (DECLARATORY JUDGMENT OF INVALIDITY – '358 PATENT)

74.      FourKites repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

75.      The claims of the '358 patent are invalid for failure to comply with the

18

requirements of patentability specified in Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, 116 and/or 120, and/or based on other judicially-created bases for invalidation.

76.     An actual and justiciable case or controversy exists between FourKites and MacroPoint as to whether one or more claims of the '358 patent is invalid.

77.     FourKites is entitled to a declaration that the claims of the '358 patent are invalid.

78.     This case is an exceptional one, and FourKites is entitled to an award of its reasonable attorneys' fees and costs under 35 U.S.C. § 285.

## COUNT VI

## (DECLARATORY JUDGMENT OF PATENT MISUSE – '358 PATENT)

79.     FourKites repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

80.     MacroPoint has and is misusing the '358 patent by asserting or threatening claims of infringement against Ruiz Food Products and other current and potential customers of FourKites.

81.     MacroPoint knows that the claims of the '358 patent are directed to unpatentable subject matter as previously found by this Court with respect to similar claims set forth in the '943 patent family, which were filed within weeks of the '358 patent and which issued to the same inventor.

82.     MacroPoint's assertion of the '358 patent against these entities is an attempt to impermissibly broaden the scope of the '358 patent grant and to block open and fair competition in the market, which constitutes a knowing, anticompetitive misuse of the '358 patent.

83.     The '358 patent was obtained and is being exploited and used by MacroPoint in

an improper manner.  Accordingly, the claims of the '358 patent are unenforceable for patent misuse.

84.     An actual and justiciable controversy exists between the parties with respect to the '358 patent, and FourKites is entitled to a declaratory judgment that the '358 patent is unenforceable for patent misuse.

85.     This case is an exceptional one, and FourKites is entitled to an award of its reasonable attorneys' fees and costs under 35 U.S.C. § 285.

## COUNT VII

## (FALSE ADVERTISING – 15 U.S.C. § 1125(a))

86.     FourKites repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

87.     MacroPoint is currently, and has in the past, knowingly engaged in false advertising and has knowingly made false or misleading misrepresentations of fact in commercial advertising or promotion that have misrepresented the nature, characteristics, and qualities of FourKites' freight tracking services and product offerings.  For example, MacroPoint published an "Intellectual Property Notice" that created the false impression that MacroPoint had valid, enforceable, and presently existing patent rights; that MacroPoint was actively pursuing live claims against FourKites for infringement of those patent rights; and that the Federal Circuit had upheld the validity of those patents rights.  On information and belief, MacroPoint also has made statements suggesting that the issuance of the '659 patent represented a determination on the merits in favor of MacroPoint and against FourKites in its still-pending court proceedings.

88.     On information and belief, MacroPoint also has misappropriated FourKites' creative works, such as by copying the FourKites Product ELD Screenshot and using it to

advertise competing freight tracking services and product offerings.  The MacroPoint Rebranded Product ELD Screenshot falsely advertises that MacroPoint's product would display the output depicted therein, and falsely suggests existence of an affiliation, connection, or association between MacroPoint and FourKites with respect to the parties' respective freight tracking services and product offerings.

89.     MacroPoint's acts constitute false or misleading descriptions and false advertising in violation of Section 43(a) of the Lanham Act, as amended, 15 U.S.C. § 1125(a).

90.     As a direct and proximate result of MacroPoint's conduct, FourKites has suffered irreparable harm to its business, reputation, goodwill, and profits. Unless MacroPoint is restrained from further misconduct, FourKites will continue to be irreparably harmed.

91.     FourKites has no remedy at law that will compensate it for the continued and irreparable harm that will be caused if MacroPoint's acts are allowed to continue.

92.     As a direct and proximate result of MacroPoint's conduct, FourKites is entitled to damages resulting from MacroPoint's violations of 15 U.S.C. § 1125(a).

93.     This case is an exceptional one, and FourKites is entitled to an award of its reasonable attorneys' fees and costs under 15 U.S.C. § 1117(a).

## COUNT VIII

## (FALSE AFFILIATION, CONNECTION, OR ASSOCIATION – 15 U.S.C. § 1125(a))

94.     FourKites repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

95.     MacroPoint is currently, and has in the past, knowingly engaged in false or misleading descriptions of fact, or false or misleading representations of fact, to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of MacroPoint

with FourKites, or as to the origin, sponsorship, or approval of the parties' respective freight tracking services and product offerings, and to misrepresent the nature, characteristics, qualities, or geographic origin of the parties' respective freight tracking services and product offerings in commercial advertising or promotion.

96.     For example, MacroPoint has published the MacroPoint Rebranded Product ELD Screenshot, in which MacroPoint depicted a FourKites' user interface for tracking and managing freight displayed on a laptop computer.  The MacroPoint Rebranded Product ELD Screenshot is likely to cause confusion, and has caused actual confusion, among the consuming public as to the existence of an affiliation, connection, or association between MacroPoint and FourKites with respect to the parties' respective freight tracking services and product offerings.

97.     MacroPoint's acts constitute the creation of a false affiliation, connection, or association in violation of Section 43(a) of the Lanham Act, as amended, 15 U.S.C. § 1125(a).

98.     As a direct and proximate result of MacroPoint's conduct, FourKites has suffered irreparable harm to its business, reputation, goodwill, and profits. Unless MacroPoint is restrained from further misconduct, FourKites will continue to be irreparably harmed

99.     FourKites has no remedy at law that will compensate it for the continued and irreparable harm that will be caused if MacroPoint's acts are allowed to continue.

100.    As a direct and proximate result of MacroPoint's conduct, FourKites is entitled to damages resulting from MacroPoint's violations of 15 U.S.C. § 1125(a).

101.    This case is an exceptional one, and FourKites is entitled to an award of its reasonable attorneys' fees and costs under 15 U.S.C. § 1117(a).

## COUNT IX

## (DECEPTIVE TRADE PRACTICES UNDER OHIO REVISED CODE CHAPTER 4165)

102.    FourKites repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

103.    MacroPoint has engaged and continues to engage in deceptive trade practices under Ohio Revised Code Chapter 4165.

104.    MacroPoint has made false or misleading statements that have actually deceived or tended to deceive FourKites' current or potential customers or partners.  MacroPoint's false or misleading statements include, but are not limited to, the misappropriation of FourKites' creative works, such as the Product ELD Screenshot, to advertise competing freight tracking services and product offerings. MacroPoint also has used in advertising an "Intellectual Property Notice" that created the false impression that MacroPoint had valid, enforceable, and presently existing patent rights; that MacroPoint was actively pursuing live claims against FourKites for infringement of those patent rights; and that the Federal Circuit had upheld the validity of those patents rights. MacroPoint's false or misleading statements were material in that they were likely to influence the decision of FourKites' current or potential customers or partners to engage in or to continue to do business with FourKites.

105.    As a direct and proximate result of MacroPoint's conduct, FourKites has suffered irreparable harm to its business, reputation, goodwill, and profits. Unless MacroPoint is restrained from further misconduct, FourKites will continue to be irreparably harmed.

106.    FourKites has no remedy at law that will compensate it for the continued and irreparable harm that will be caused if MacroPoint's acts are allowed to continue.

107.    As a direct and proximate result of MacroPoint's conduct, FourKites is entitled to

23

damages resulting under Ohio Revised Code Chapter 4165.

108.    MacroPoint willfully engaged in the foregoing deceptive trade practices, and FourKites is entitled to its reasonable attorneys' fees and costs under ORC 4165.03(B).

## COUNT X

### (TORTIOUS INTERFERENCE)

109.    FourKites repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

110.    FourKites has entered into contracts and agreements with, or has had a prospective contractual or business relationship with, current and potential customers or partners, including for example Ruiz Food Products, for the provision of services related to FourKites' business activities.

111.    On information and belief, MacroPoint has knowledge of FourKites' contractual relationships, business relationships, and/or prospective contractual or business relationships with current and potential customers or partners, including for example Ruiz Food Products, for the provision of services related to FourKites' business activities.

112.    On information and belief, MacroPoint has intentionally caused FourKites' current and potential customers or partners to not enter into business relationships, to not enter into contractual relationships, to not fulfill contractual relationships to the full extent originally expected by the parties thereto, or to not enter into or to delay entering into full service agreements with FourKites as expected by the parties thereto.

113.    On information and belief, MacroPoint lacks justification for its intentional interference with FourKites' contractual relationships, business relationships, and/or prospective contractual or business relationships.

114.    As a direct and proximate cause of MacroPoint's misconduct, FourKites has been damaged in an amount to be determined at trial.

## JURY DEMAND

Pursuant to Rules 38 and 57, FourKites demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, FourKites prays that the Court enter judgment in its favor and against MacroPoint as follows:

A.    Finding that FourKites has not and will not infringe any valid claim of the '659 patent and '358 patent;

B.    Finding that the claims of the '659 patent and '358 patent are invalid;

C.    Finding that the claims of the '659 patent and '358 patent are unenforceable.

D.    Declaring that the claims of the '659 patent and '358 patent are not infringed;

E.    Declaring that the claims of the '659 patent and '358 patent are invalid;

F.    Declaring that the claims of the '659 patent and '358 patent are unenforceable;

G.    Finding that MacroPoint has made false or misleading misrepresentations of fact in commercial advertising or promotion that have misrepresented the nature, characteristics, and qualities of FourKites' freight tracking services and product offerings and ordering MacroPoint permanently to cease such activities and to pay FourKites damages in an amount to be determined at trial in satisfaction of the same;

H.    Finding that MacroPoint has created a false affiliation, connection, or association with FourKites as to the parties' respective freight tracking services and product offerings and ordering MacroPoint permanently to cease such activities and to pay

FourKites damages in an amount to be determined at trial in satisfaction of the same;

I.     Finding that MacroPoint has engaged and continues to engage in deceptive trade practices under Ohio Revised Code Chapter 4165 and ordering MacroPoint permanently to cease such activities and to pay FourKites damages in an amount to be determined at trial in satisfaction of the same;

J.     Granting FourKites judgment in its favor on its claims;

K.     Finding this case exceptional under 35 U.S.C. § 285 and/or 15 U.S.C. § 1117(a), and that MacroPoint willfully engaged in deceptive trade practices, and awarding FourKites its costs and reasonable attorneys' fees; and

L.     Awarding such further relief as the Court deems just and proper.

Respectfully submitted,


 /s/  R. Eric Gaum
R. Eric Gaum (0066573)
regaum@hahnlaw.com
Nathan B. Webb (0084506)
nwebb@hahnlaw.com
HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Phone:  216-621-0150
Fax:  216-241-2824

*Pro Hac Vice Admissions To Be Requested For:*

Adam S. Weiss
AWeiss@Polsinelli.com
Gary E. Hood
GHood@Polsinelli.com
Mark T. Deming
MDeming@Polsinelli.com
POLSINELLI PC

161 N. Clark Street, Suite 4200
Chicago, Illinois 60601
Phone:  312-819-1900
Fax: 312-819-1910

Attorneys for Plaintiff FourKites, Inc.