# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| FOURKITES, INC., | ) | CASE NO. 1:16-cv-02703-CAB |
| | ) | |
| PLAINTIFF, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | |
| MACROPOINT, LLC, | ) | **REPLY IN SUPPORT OF** |
| | ) | **PLAINTIFF'S MOTION TO** |
| DEFENDANT. | ) | **REASSIGN THIS ACTION TO THE** |
| | ) | **HONORABLE JUDGE PATRICIA A.** |
| | ) | **GAUGHAN** |

**TABLE OF CONTENTS**

I.   INTRODUCTION..................................................................................................... 1

II.  ARGUMENT............................................................................................................ 2

    A.   Judge Gaughan Is Familiar with the Facts and Law Relevant to The Dispute. ......................................................................................................... 2

        i)   The Prior Litigation Between MacroPoint and FourKites Was Substantial. ........................................................... 2

            (1)   The Parties Presented Extensive Evidence to Judge Gaughan Regarding Subject-Matter Eligibility Under Section 101. .......................................... 2

            (2)   Significant Progress Was Made Under the Local Patent Rules. ......................................................................... 3

            (3)   The Parties Conducted Extensive Written Discovery. ............................................................................. 4

        ii)  The Patents-in-Suit Are Not Materially Different From Those Judge Gaughan Previously Considered. ........................... 4

            (1)   The Federal Circuit, This Court, and the Patent Office Agree That MacroPoint's Many Patent Claims Are Not Patentably Distinct. ............................... 4

            (2)   Comparing the Patents-in-Suit to Those Held Invalid by Judge Gaughan and the Federal Circuit Confirms The Absence of Meaningful Differences. ....................................................................... 7

        iii) Subject-Matter Eligibility Under § 101 Will Be Part of This Case Just as in Judge Gaughan's First Case. ..................... 9

    B.   This Case Is Not Likely to be Stayed or Dismissed. ............................................ 9

        i)   The Is Not a First-to-File Case. .................................................... 10

        ii)  MacroPoint's Forum Shopping Counsels Against Application of the First-to-File Rule. ......................................... 11

        iii) The Customer-Suit Exception Also Removes This Case From the Ambit of the First-to-File Rule. ................................ 11

|   |   |   |   |
|---|---|---|---|
|   |   | iv) MacroPoint Incorrectly Suggests That Its Forum Choice Receives Extraordinary Deference. ............................... 11 |   |
|   | C. | MacroPoint's Desperation to Avoid Judge Gaughan Is Not Sufficient Reason to Avoid Reassignment. ............................................................................ 12 |   |
|   |   | i) The Only "Judge Shopping" Present Is That Of MacroPoint. ................................................................................... 12 |   |
|   |   | ii) MacroPoint's Argument About the SaleBug Case Is A Red Herring. ................................................................................. 14 |
| III. | CONCLUSION ............................................................................................................ 15 |   |   |

**I.      INTRODUCTION.**

It is not surprising that MacroPoint does not want this case heard by Judge Gaughan. MacroPoint, of course, chose this forum to litigate its patents when it first sued FourKites. Its first case against FourKites was assigned to Judge Gaughan, and she thoroughly analyzed all five of MacroPoint's closely-related patents—and to MacroPoint's apparent surprise, held every claim of every patent invalid, explaining her rationale in a detailed opinion. Moreover, although MacroPoint conspicuously failed to mention it in its opposition brief, the Federal Circuit Court of Appeals had already summarily affirmed that decision *de novo*. In other words, Judge Gaughan's opinion was not only correct but its effect will be relevant to all future cases involving these parties and this technology.

What MacroPoint said in opposition instead—accusing FourKites of "judge shopping," suggesting that that '639 patent and '358 patent are completely different from the patents invalidated by Judge Gaughan, and mischaracterizing the scope of MacroPoint's prior cases in this Court—is a desperate litigation strategy designed only to further delay the marketplace effects of these prior decisions and get a second bite at the apple in front of a new judge who is not already familiar with its patents and technology.

In short, the patents in this case are materially the same as those Judge Gaughan (and the Federal Circuit) already invalidated. Judge Gaughan is thus not only already familiar with the subject matter in the patents, but is well familiar with the issues and the subject technology more generally. While FourKites' motion simply attempts to conserve limited judicial and party resources, and ensure consistent treatment of the subject matter at issue, MacroPoint's unabashed rejection of reassignment, coupled with it suing not FourKites but one of FourKites' customers in an entirely different court, reflects that it, not FourKites, is shopping for a judge, namely, a judge other than Judge Gaughan. No clearer example of "judge shopping" could be made.

1

FourKites' motion should be granted so that the Court and the parties can proceed with the merits as quickly and efficiently as possible.

## II. ARGUMENT

### A. Judge Gaughan Is Familiar with the Facts and Law Relevant to The Dispute.

While paying lip service to "conservation of scarce judicial resources," MacroPoint nonetheless argues that this case should not be reassigned to Judge Gaughan because "[d]uring the year since Judge Gaughan dismissed the prior action, the law of patentability of computer-implemented inventions has changed substantially." Dkt. # 11 at 7. Nothing could be further from the truth. The four cases MacroPoint cites—*Amdocs*, *McRO*, *BASCOM*, and *Enfish*—were all decided while MacroPoint's appeal of Judge Gaughan's decision in the prior litigation was pending. If those cases had "changed substantially" the applicable law in a way that was meaningful to the MacroPoint patents, then the Federal Circuit panel, which was made up of circuit judges who participated in the *McRO* and/or *Enfish* decisions, would not have affirmed Judge Gaughan's decision—let alone affirmed it summarily. The fact is, MacroPoint's patents are the easy case, and Judge Gaughan's decision was legally correct.

#### i) The Prior Litigation Between MacroPoint and FourKites Was Substantial.

MacroPoint accuses FourKites of "puffery" for "attempt[ing] to show that substantial work was performed and progress made in the earlier case before Judge Gaughan." Dkt. # 11 at 6. Setting aside MacroPoint's inappropriate minimization of the substantial effort expended by a Judge of this Court in the prior case, the record supports FourKites' position.

##### (1) The Parties Presented Extensive Evidence to Judge Gaughan Regarding Subject-Matter Eligibility Under Section 101.

After MacroPoint amended its complaint in the prior case before Judge Gaughan, FourKites challenged the validity of the patents with a motion, memorandum, and supporting

2

exhibits totaling 148 pages. *See* Case No. 15-cv-1002, Dkt. # 18. MacroPoint's opposition to the motion totaled 298 pages. *See* Case No. 15-cv-1002, Dkt. ## 21, 21-3, 23-4. FourKites' reply and supporting exhibits added another 150 pages. *See* Case No. 15-cv-1002, Dkt. # 22. MacroPoint then filed a sur-reply, which FourKites objected to, but which Judge Gaughan ultimately allowed. *See* Case No. 15-cv-1002, Dkt. ## 23, 24.

All told, Judge Gaughan had before her more than 600 pages worth of submissions, before entering a thorough 14-page memorandum opinion and order finding MacroPoint's patents invalid. Case No. 15-cv-1002, Dkt. # 25. In her decision, Judge Gaughan carefully considered all five patents and all 94 claims, and found claim 1 of the '943 patent representative. *Id.* at 1–3. She addressed the propriety of considering patent eligibility under § 101 at the Rule 12(b)(6) stage of the case, as well as the presumption of validity to be afforded the claims. *Id.* at 3–4. Judge Gaughan then applied the law, in particular the Supreme Court's *Alice* test for patent eligibility, in view of the parties' arguments, and found in favor of FourKites that MacroPoint's patents "are directed to the abstract idea of tracking freight." *Id.* at 4–8. She then examined the claims, including the "inventive concepts" that MacroPoint alleged were found in the claims, and found that their limitations were "insufficient to confer patent eligibility." *Id.* at 8–13. Judge Gaughan confirmed her assessment by *sua sponte* applying the machine-or-transformation test and finding that MacroPoint's patents were "not tied to any particular machine or apparatus" and "result[ed] in no transformation." *Id.* at 13.

**(2)   Significant Progress Was Made Under the Local Patent Rules.**

MacroPoint's characterization of this substantial effort by Judge Gaughan as "a brief earlier case," dkt. 11 at 1, is disingenuous. Indeed, not only did the parties and the Court invest substantial time and effort in addressing the § 101 patent eligibility issues, but they also entered a schedule for disclosure of patent contentions and claim construction positions. *See* Case No. 15-

3

cv-1002, Dkt. # 15.  MacroPoint served more than 100 pages of infringement contentions and claim charts.  Ex. A at ¶ 3.  FourKites' non-infringement contentions were also more than 100 pages, and its invalidity contentions were more than 350 pages.  *Id.* at ¶ 4.  The parties also exchanged their initial list of terms for claim construction just days before Judge Gaughan dismissed the case.  *Id.* at ¶ 5.

### (3) The Parties Conducted Extensive Written Discovery.

The parties had also engaged in written discovery.  *Id.* at ¶ 6.  MacroPoint served seven interrogatories and more than 60 requests for production of documents.  *Id.*  FourKites served two interrogatories and 23 requests for production.  *Id.*  Between them, the parties produced nearly 8000 pages of documents, and they were in negotiations about additional discovery when the case was dismissed.  *Id.* at ¶ 7.  MacroPoint's suggestion that the parties had spent "[t]he vast majority of the time . . . taken up by preliminary briefing schedules" or that "[p]rocedurally, [the] case was in its infancy when Judge Gaughan dismissed MacroPoint's claims," dkt. # 11 at 7, are demonstrably false.

### ii) The Patents-in-Suit Are Not Materially Different From Those Judge Gaughan Previously Considered.

#### (1) The Federal Circuit, This Court, and the Patent Office Agree That MacroPoint's Many Patent Claims Are Not Patentably Distinct.

MacroPoint's opposition to reassigning this case to Judge Gaughan is premised on the notion that the '659 patent and '358 patent are "different" patents than those that she considered at length in the prior litigation.  While it may be true, as an abstract legal proposition, that every patent claim is a "separate invention," the claims in MacroPoint's patents are so overlapping and duplicative that they may be considered collectively.  *See* Case No. 15-cv-1002, Dkt # 18 at 3–7 (explaining that the 94 patent claims at issue in the prior litigation were all comprised of some

4

combination of seven basic components); *see also* Case No. 15-cv-1002, Dkt. # 18-5 (Appendix of Patent Claims summarizing the repetitive combinations of elements).

MacroPoint has made this argument before, and it has been repeatedly rejected. In its opposition to FourKites' motion to dismiss before Judge Gaughan, MacroPoint faulted FourKites for "ask[ing] this Court to invalidate ninety-four claims across five patents based on its 'analysis' of two claims in a single patent." Case No. 15-cv-1002, Dkt. # 21 at 11. Despite that objection, Judge Gaughan found that MacroPoint failed to articulate any way in which the various patent claims were substantively different such they ought to be treated individually. *See* Case No. 15-cv-1002, Dkt. # 25 at 2 n.1 (finding in the memorandum opinion that "Plaintiff does not dispute that Claim 1 is representative of the claims of the patents-in-suit. Plaintiff instead argues that defendant fails to address all of the 94 claims across all five patents-in-suit. Plaintiff is incorrect. If one claim is a representative claim, courts need not address each claim individually.").

On appeal, MacroPoint argued that Judge Gaughan's reliance on a representative claim was improper. *See* Ex. B, MacroPoint Opening Appellate Brief, at 12 ("Although the court invalidated all 94 claims of the patents-in-suit, it addressed only one—claim 1 of the '943 patent—even though MacroPoint had identified others as distinct."); *see also id.* at 29–30 (requesting remand for a claim-by-claim analysis). MacroPoint specifically argued that its "system claims, which recite a particular arrangement of programmed computers that cannot be said to cover human thought alone or be subject to the other arguments that FourKites directs at some of the method claims" ought to be given individualized treatment. *See* Ex. C, MacroPoint

5

Reply Appellate Brief at 16–17. The Federal Circuit rejected MacroPoint's argument, and instead summarily affirmed Judge Gaughan's decision two days after oral argument.[1] Ex. D.

Even the Patent Office has concluded that MacroPoint's patents are not patentably distinct. As FourKites explained in the prior litigation before Judge Gaughan, each of MacroPoint's patents is subject to a terminal disclaimer because the Patent Office rejected the claims as "generally broader than the claims" in MacroPoint's previous patents. *See* Case No. 15-cv-1002, Dkt. # 18 at 6–7. Even MacroPoint acknowledged that the Patent Office had rejected the claims for "nonstatutory double patenting," meaning that the claims of MacroPoint's prior-issued patents "either anticipate or render obvious the claims of the pending application." *See* Case No. 15-cv-1002, Dkt. # 21 at 8–9, n.6.

The Patent Office made the same determination about the patents-in-suit. On January 4, 2016, the Examiner issued a non-final office action rejecting the claims of Application No. 14/987,707—which would later issue as the '659 patent—on the grounds of nonstatutory double patenting because "[c]laims 1-30 are generally broader than the claims in Previous Patent US 8,604,943, 8,330,626, **8,275,358**, 9,070,295, 9,082,097, 9,082,098, and 9,087,313." *See* Ex. E at 3–4 (emphasis added). That is, the Patent Office found that not only are the claims of the '659 patent not patentably distinct from those already considered by Judge Gaughan in the prior litigation, but they are not patentably distinct from the claims in the '358 patent. MacroPoint acceded to that objection and filed a disclaimer to obtain issuance of the '659 patent. *Id.* at 6–7.

---

[1] The Court affirmed Judge Gaughan's ruling under Federal Circuit Rule 36, which provides that "[t]he court may enter a judgment of affirmance without opinion, citing this rule, when it determines that any of the following conditions exist and an opinion would have no precedential value: (a) the judgment, decision, or order of the trial court appealed from is based on findings that are not clearly erroneous; . . . (c) the record supports summary judgment, directed verdict, or judgment on the pleadings; . . . (e) a judgment or decision has been entered without an error of law."

> **(2) Comparing the Patents-in-Suit to Those Held Invalid by Judge Gaughan and the Federal Circuit Confirms The Absence of Meaningful Differences.**

MacroPoint insists that there is no overlap between this case and the prior case, but beyond lodging conclusory allegations, it fails to explain how these cases are substantively different. Even a cursory examination of the claims of the '659 patent and '358 patent confirms that they are not.

The '659 patent is essentially identical to the previously considered patents. *See* Ex. F. It has the same inventor, the same abstract, the same figures, the same written description, and the same claimed subject matter as the previously considered patents. *Id.* Claim 1 of the '659 patent, for example, consists of nothing more than the same claim elements that Judge Gaughan and the Federal Circuit already considered in the claims of the other patents. *See id.* at 21:36–22:4. The elements are reordered, but the only "differences" are not meaningful. For example, claim 1 of the '659 patent substitutes the word "estimate" for the word "correlating" that was held to not constitute an inventive concept:

| **Excerpt of Claim 1 of the '659 Patent** | **Except of Claim 1 of the '295 Patent** |
|---|---|
| estimate the location of the vehicle or the freight carried by the vehicle based at least in part on the location information of the mobile device comprising the GPS receiver; and | correlating the location information of the communications device to the location of the at least one of the vehicle or the freight carried by the vehicle based at least in part on the correlation of the at least one of the vehicle or the freight carried by the vehicle to the communications device; and |

*Compare* Ex. F at 21:64–67 *with* Ex. G at 21:26–31.

The claims of the '659 patent also include lengthy recitations of "a mobile device" and "a server," but those elements were already present in the claims of the invalid patents. The additional language—a mobile device having a GPS, a microprocessor, and programing to send

7

and receive GPS location information, or a server having a CPU, memory, and programming—takes up more space on the page, but does not add anything of substance. All of the other claim elements, including all the elements of the dependent claims, were present in the invalid patents. The claims of the '659 patent, like the claims of the patents Judge Gaughan and the Federal Circuit already considered, consist of nothing more than signals of information being passed between conventional machines that MacroPoint did not invent.

The claims of the '358 patent are also not meaningfully different. Despite being from a separate patent family,[2] substantial portions of the written description of the '358 patent are a nearly verbatim copy of the written description of the '659 patent and the other invalid patents. *Compare, e.g.*, Ex. H at 1:15–34 *with* Ex. G at 1:20–39; *also* Ex. H at 1:41–2:8 *with* Ex. G at 1:51–2:16; *also* Ex. H at 3:24–55 *with* Ex. G at 3:63–4:27; *also* Ex. H at 5:56–7:59 *with* Ex. G at 9:33–11:28; *also* Ex. H at 8:8–10:8 *with* Ex. G at 13:3–15:9. As the identical figures in the two sets of patents make clear, the '358 patent is just directed to one part of the alleged "invention"—obtaining consent—that is also the subject-matter of MacroPoint's other patents. *See* Ex. I. Even the Patent Office recognized the substantial overlap between them when it cited the '358 patent in its double patenting rejection of the application that eventually issued as the '659 patent. Ex. E at 3–4.

---

[2] Colloquially, a "patent family" refers to all the applications and patents that can trace their lineage back to a common parent application. The '659 patent, for example, is a continuation of Application No. 14/752,005, which is abandoned, which was in turn a continuation of the '313 patent, which was a continuation of the '295 patent, which was a continuation of the '943 patent, which was a continuation of U.S. Patent No. 8,330,626 (which MacroPoint has never asserted against anyone). All of the patents previously considered by Judge Gaughan can be traced back to the '626 patent, which was filed on March 26, 2012. The '358 patent cannot. It was filed as a standalone application on March 1, 2012.

### iii) Subject-Matter Eligibility Under § 101 Will Be Part of This Case Just as in Judge Gaughan's First Case.

Regardless of who presides over this case, the validity of the '659 patent and '358 patent will be a contested issue here, just as before Judge Gaughan in the first MacroPoint case. MacroPoint notes that the '659 patent was issued despite the Examiner being aware of Judge Gaughan's decision that the other MacroPoint patents were invalid, but that does not mean "the legal ground Judge Gaughan relied upon in her opinion to conclude that MacroPoint's patents were invalid does not apply to the '659 patent." Dkt. # 11 at 6.

This argument that the Patent Office's consideration of a basis for invalidity somehow immunizes a patent from judicial scrutiny has been made by MacroPoint before. *See* Case No. 15-cv-1002, Dkt. # 21 at 2–3, 8–11, 14, 25–26, 29 (arguing to Judge Gaughan that the four of the five patents at issue in the prior litigation must be valid because they were examined and issued after the Patent Office published guidelines for examining patent applications under *Alice*); *see also* Ex. B at 11 (arguing the same on appeal to the Federal Circuit). Judge Gaughan did not accept it. The Federal Circuit did not accept it. MacroPoint's continued reliance on this argument is baffling given that "a court is not bound by the PTO's actions and must make its own independent determination of patent validity." *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1322 (Fed. Cir. 2005).

### B. This Case Is Not Likely to be Stayed or Dismissed.

MacroPoint's arguments about the first-to-file rule and deference to a plaintiff's choice of forum are legally unsound and inconsistent with representations it has made to other courts. Citing cases from the Fifth Circuit and the Eastern District of Texas—rather than from the Sixth Circuit or this Court—MacroPoint seems to argue that this case essentially overlaps with the Ruiz Foods case and should take a back seat to it. Dkt. # 11 at 8–11. Yet on the same day it

9

filed its opposition to the instant motion, MacroPoint filed a brief in the Eastern District of Texas urging that Court not to transfer the Ruiz Foods case to this Court because "FourKites . . . is not a party to [the Ruiz Foods] case" and the location of evidence in FourKites' custody "is not relevant to the venue analysis." Ex. J at 8.  But here, when it serves the interest of avoiding Judge Gaughan, MacroPoint is ready to treat FourKites and Ruiz Foods as if they are one in the same.

        i)       **The Is Not a First-to-File Case.**

MacroPoint has not moved to transfer or stay this case under the first-to-file rule, and if it does so, it will be unsuccessful.  "The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc.*, 16 Fed. App'x 433, 437 (6th Cir. 2001).  When deciding whether to apply the first-to-file rule, "courts generally evaluate three factors: (1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016).

None of these factors support applying the first-to-file rule to this case.  While the Ruiz Foods case was filed before this one, neither case has progressed meaningfully.  Moreover, this case is the first and only case in which all of the issues as between FourKites and MacroPoint are joined—not only patent issues, but MacroPoint's numerous business torts.  The parties are likewise dissimilar.  Here, the suit is between FourKites and MacroPoint.  In Texas, the suit is between MacroPoint and one of FourKites' customers.  For the same reasons, the issues and claims at stake are not the same.  The Texas case can resolve—at best—whether one customer of FourKites infringes the '659 patent and '358 patent.  In this case, FourKites seeks declaratory

judgment the patents-in-suit are invalid and not infringed, regardless of what customer may be using one of FourKites' services.

### ii) MacroPoint's Forum Shopping Counsels Against Application of the First-to-File Rule.

The first-to-file "rule" is not a rigid rule, as much as a guiding principle, and "[]factors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping." *Zide Sport*, 16 Fed. App'x at 437.  MacroPoint's blatant forum shopping—filing suit against Ruiz Foods, a FourKites customer, in an entirely different judicial district, after having first sued FourKites in this district but having had all of its asserted patent claims dismissed as invalid in this Court—is an independent basis for declining to apply the first-to-file rule in this case.

### iii) The Customer-Suit Exception Also Removes This Case From the Ambit of the First-to-File Rule.

In addition, the customer-suit exception applies here.  In particular, "[w]hen a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement or patent invalidity, the suit by the manufacturer generally take precedence."  *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014). "This 'customer-suit' exception to the 'first-to-file' rule exists to avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute." *Id.*  That is precisely what happened here.

### iv) MacroPoint Incorrectly Suggests That Its Forum Choice Receives Extraordinary Deference.

Finally, MacroPoint's reliance in a 1999 Eastern District of Texas case and a 1966 Fifth Circuit case to argue that its "choice of forum" deserves particularly high regard is woefully misplaced.  Indeed, the substantial body of law that has developed over the last ten years as it

11

concerns venue transfer analysis in the Eastern District of Texas is wholly absent from its brief. "While the plaintiff's choice of venue is accorded deference, Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (granting writ of mandamus directing Eastern District of Texas to transfer case to the Southern District of Ohio); *see also In re Nintendo*, 589 F.3d 1194, 1200 (Fed. Cir. 2009) (granting writ of mandamus where "[t]he district court gave the plaintiff's choice of venue far too much deference" and directing Eastern District of Texas to transfer case to Western District of Washington).[3] Indeed, under Fifth Circuit law, the deference afforded a plaintiff's choice of forum has been abrogated so much that some courts question whether it exists any more. *See, e.g.*, *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-CV-655, 2013 WL 9600333, at *3 (E.D. Tex. Mar. 21, 2013) ("Only the Fifth Circuit gives no deference to a plaintiff's choice of forum.") (clarified on other grounds 2013 WL 12138549 (E.D. Tex. June 28, 2013)).

  **C.**  **MacroPoint's Desperation to Avoid Judge Gaughan Is Not Sufficient Reason to Avoid Reassignment.**

   **i)**  **The Only "Judge Shopping" Present Is That Of MacroPoint.**

MacroPoint's "judge shopping" allegations are baseless. FourKites did not ask to get sued in the Northern District of Ohio by MacroPoint last year. FourKites did not seek Judge Gaughan to preside over that prior litigation. FourKites has no reason to believe Judge Gaughan has any preconceived notions about patent law or subject-matter eligibility under § 101 that

---

[3] *See also In re Toyota Motor Corp.*, 747 F.3d 1338 (Fed. Cir. 2014) (interpreting Fifth Circuit venue law, granting petition for mandamus, and directing transfer of venue); *In re WMS Gaming Inc.*, 564 Fed. App'x 579 (Fed. Cir. 2014) (same); *In re TOA Techs., Inc.*, 543 Fed. App'x 1006 (Fed. Cir. 2013) (same) *In re Microsoft Corp.*, 630 F.3d 1361 (Fed. Cir. 2011) (same); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010) (same); *In re Hoffmann–La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009) (same); *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009) (same).

would give it an advantage in litigation with MacroPoint. Indeed, when FourKites filed its motion to dismiss in the prior litigation, the only other published decision by Judge Gaughan on the same legal question was adverse to it. *See Progressive Cas. Ins. Co. v. Safeco Ins. Co.*, No. 10-cv-1370, 2010 WL 4698576 (N.D. Ohio Nov. 10, 2010) (denying Rule 12(b)(6) motion to find patent invalid under 35 U.S.C. § 101).

The fact is, it was MacroPoint who chose this Court to assert its patents against FourKites. Through the regular procedures of this Court, its case was assigned to Judge Gaughan. As a result, Judge Gaughan spent months familiarizing herself with the parties, the patents, the technology, and the law, and she issued a reasoned, legally correct decision that the Federal Circuit affirmed. She is the only district court judge in the country who is already familiar with the issues in this case, and can immediately take them up without investing substantial time and resources to learn the facts and issues. And that is the reason why FourKites is asking that this case be reassigned to her.

Before casting aspersions, MacroPoint ought to carefully consider its own conduct leading up to the filing of this suit. MacroPoint is an Ohio company. Twice it has sued for patent infringement in this Court. Only after Judge Gaughan held its patents invalid did MacroPoint "suddenly" decide that it would be more expedient to file suit in another forum.[4]

---

[4] MacroPoint suggests that it did not sue Ruiz Foods in Ohio because "Ruiz Foods has no presence anywhere in the State of Ohio and could not be compelled to appear in the Northern District of Ohio." Dkt. # 11 at 8. This is a hindsight explanation invented for the purposes of opposing the present motion, and it is flatly contradicted by the allegations in the complaint MacroPoint filed in Texas. *See* Ex. K. There, MacroPoint alleges that "Ruiz operate[s] trucks or vehicles to deliver freight . . . to various distributors or retailers. Ruiz uses machines or groups of machines to monitor" those deliveries, which is the basis for MacroPoint's allegations of infringement. *Id.* at ¶ 5. Because the claimed "groups of machines" and systems include "mobile device[s]" carried by the truck driver, MacroPoint alleges that Ruiz Foods has infringed the patents not only in Texas "but elsewhere in the United States." *See, e.g., id.* at ¶¶ 26, 44. Thus, according to MacroPoint's complaint, it could have sued Ruiz Foods in any district in

13

When, after this case was not initially assigned to Judge Gaughan and MacroPoint counsel was asked by FourKites counsel if it would agree to reassignment of this case to Judge Gaughan, MacroPoint counsel did not hesitate in rejecting the proposal out of hand. MacroPoint's intentions here are obvious, and if anyone is guilty of impermissible "shopping" for a better forum, it is MacroPoint.

### ii)     MacroPoint's Argument About the SaleBug Case Is A Red Herring.

MacroPoint apparently faults FourKites for seeking reassignment to Judge Gaughan, as opposed to Judge Gwin, because one of the five MacroPoint patents was at issue in *MacroPoint, LLC v. SaleBug, LLC et al.*, No. 1-14-cv-313, over which Judge Gwin presided. Dkt. # 11 at 4, 9.  First and foremost, the relevant data point is which judge presided over the MacroPoint/FourKites dispute. After all, it is that dispute that is at issue here. And that dispute was presided over by Judge Gaughan.

Beyond that apparently inconvenient fact for MacroPoint, MacroPoint contends that the SaleBug litigation "was more substantial" than the prior FourKites litigation. This, again, has no apparent basis in evidence. *See* Dkt. # 11-5. Judge Gwin appears to have conducted an initial case scheduling conference, after which he entered an agreed scheduling order, and then later adjusted the schedule pursuant to a stipulated motion of the parties. *Id.* A second status conference was held just weeks before the parties stipulated to dismissal.[5] *Id.* Nowhere does the docket indicate that any substantive positions about the patent at issue were submitted for Judge

---

which it delivers freight. Instead, MacroPoint chose the Eastern District of Texas, and not this district, for an improper purpose.

[5] While MacroPoint emphasizes that the SaleBug litigation "was pending for more than one year," dkt. # 11 at 4, the docket reflects that MacroPoint did not execute service in that case until more than three months after the case was filed, and a case schedule was not entered until nearly nine months after the case was filed. *See* dkt. # 11-5. A little more than three months later, the case was dismissed. *Id.*

Gwin's consideration, and tellingly, MacroPoint does not specifically identify any such submissions. *Id.*

### III. CONCLUSION

WHEREFORE, Plaintiff FourKites, Inc. prays the Court grant its motion and enter an order reassigning this matter to the Honorable Judge Patricia Gaughan, and for all other relief the Court deems just and appropriate.

        Respectfully submitted,

        /s/ R. Eric Gaum
R. Eric Gaum (0066573)
regaum@hahnlaw.com
Nathan B. Webb (0084506)
nwebb@hahnlaw.com
HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, OH 44114
Phone: 216-621-0150
Fax: 216-241-2824

Gary E. Hood (pro hac vice)
ghood@polsinelli.com
Adam S. Weiss (pro hac vice)
aweiss@polsinelli.com
Mark T. Deming (pro hac vice)
mdeming@polsinelli.com
POLSINELLI PC
161 North Clark, Suite 4200
Chicago, IL  60601
Phone: 312-819-1900
Fax: 312-819-1910

Counsel for Plaintiff,
FourKites, Inc.

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2016, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

    /s/ R. Eric Gaum
One of the Attorneys for Plaintiff,
FourKites, Inc.